UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,　　)
　　　　　　　　　　　　　　　　)　　Case No. CR-07-255-S-EJL
　　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　)　　MEMORANDUM ORDER
vs.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
DANIEL M. DAVIS,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendant.　　)
_____ )

　　　　　Before the Court in the above-entitled matter is the Defendant Daniel M.

Davis' Motion to Withdraw Guilty Plea. The Ninth Circuit remanded the motion to this Court

with direction that a record be made regarding Mr. Davis' allegations that his counsel's

actions at the time of the plea hearing rendered his plea involuntary. (Dkt. No. 133.)

Accordingly, the Court set a hearing date for September 2, 2010 and took testimony

regarding the allegations.[1] Based on the testimony presented at the hearing and the entire record herein, the Court finds as follows.

## Factual and Procedural Background[2]

On August 16, 2007, the Government filed a criminal Complaint in this matter alleging Mr. Davis unlawfully and knowingly possessed sexually explicit images of minors engaging in sexually explicit conduct. (Dkt. No. 1.) At the initial appearance, the Court appointed the Federal Public Defender to represent Mr. Davis. (Dkt. No. 6.) The Government later filed an Indictment charging Mr. Davis with one count of Possession of Sexually Explicit Images of Minors and one count of Criminal Forfeiture. (Dkt. No. 14.) At the arraignment, Mr. Davis appeared with retained counsel John E. Sutton. (Dkt. No. 17.) On November 30, 2007, a Notice of Appearance was filed by Mr. Sutton and Charles C. Crafts as attorneys of record for Mr. Davis. (Dkt. No. 23.)The jury trial was initially set for December 4, 2007. (Dkt. No. 17.) The trial was later continued to February 26, 2008 and again to May 27, 2008 to allow time for Mr. Davis to undergo mental evaluations. (Dkt. Nos.

---

[1] Mr. Davis filed a Motion to Proceed *Pro Se* before the Ninth Circuit. The Ninth Circuit denied the Motion. In an abundance of caution, the parties made the Court aware of the Motion and the Ninth Circuit's denial of the Motion. Mr. Silvey represented that since the Ninth Circuit denied the motion a year ago he and Mr. Davis have not had any problems in their relationship. The Court inquired of Mr. Davis regarding the matter and asked him if he would like to be heard on the matter to which he stated he did not. There being no motion before the Court and there being no request by Mr. Davis for new counsel or to proceed *pro se*, the Court proceeded with the hearing on the Motion to Withdraw Guilty Plea.

[2] The Court has included a lengthy recap of the factual background in this case as it is relevant in order to properly analyze the Motion to Withdraw Guilty Plea in the context in which the relevant events occurred.

25, 30.) The Court granted another motion to continue moving the trial date to July 1, 2008. (Dkt. No. 35.)

Thereafter, Mr. Davis filed a Motion for Self Representation and Release on Recognizance to which the Government responded. (Dkt. Nos. 36, 37.) On June 18, 2008, the Court scheduled a hearing on Mr. Davis' Motion. At this hearing, the Court inquired of Mr. Davis regarding his request to proceed *pro se* and took argument on the Motion. At the request of the parties, the Court recessed the hearing until the following day to allow Mr. Davis time to confer privately with his counsel. (Dkt. No. 47.) The next day, the Court reconvened the hearing and was advised that Mr. Davis had decided to enter a guilty plea. The Court made the necessary Rule 11 inquiries of Mr. Davis and accepted his plea of guilty which was made pursuant to a written plea agreement. (Dkt. Nos. 48, 52, 56.)[3] The Motion for Self Representation was deemed moot. (Dkt. No. 52.)

The sentencing date was set for September 15, 2008. On August 28, 2008, Mr. Davis filed *pro se* Motions to Continue the sentencing arguing ineffective assistance of counsel and for Reconsideration of his request for self representation. (Dkt. Nos. 54, 55.) On September 3, 2008, Mr. Davis again filed a *pro se* Motion to Suppress and Motion for Injunction both of which sought to address his allegation that certain CD fragments were used to force him into pleading guilty. (Dkt. Nos. 57, 58.) On September 4, 2008, Mr. Davis' counsel, Mr. Crafts and Mr. Sutton, filed a Motion to Withdraw and Motion to Continue

---

[3] It is on these days, June 18 and 19, 2008, that Mr. Davis alleges the events giving rise to his Motion to Withdraw his Plea occurred between he and his then attorney, Mr. Crafts.

Sentencing. (Dkt. Nos. 59, 60.) The Court granted the Motion to Continue Sentencing and set a hearing on the remaining pending Motions. (Dkt. No. 61.) Prior to the hearing, Mr. Davis made further *pro se* filings of a Motion to Withdraw his Plea of Guilty and Motion to Dismiss Complaint. (Dkt. Nos. 62, 64.) As to his Motion to Withdraw his plea, Mr. Davis raised his allegations that his counsel at the time of his plea on June 18 and 19, 2008, Mr. Crafts, coerced him into entering his guilty plea with threats that the Government would bring obstruction of justice charges against his family if he refused. Mr. Davis asserts his attorney confronted him with the Government's evidence in the form of a recorded telephone conversation between he and his mother where they allegedly discussed destroying possible evidence. (Dkt. No. 64.)

On September 15, 2008, the hearing on all pending Motions was held where upon the Court engaged Mr. Davis at length regarding his conflict with current counsel, his desire to proceed *pro se* or have new counsel appointed, and the nature of the other pending Motions. (Dkt. No. 66.) The Court ordered appointment of new counsel whereupon Philip H. Gordon was ultimately appointed to represent Mr. Davis. (Dkt. No. 72.)

The Court granted Mr. Gordon additional time to review the record in this case and obtain copies of the transcripts in order to properly advise Mr. Davis regarding his Motions and how best to proceed in this matter. (Dkt. Nos. 73, 75, 76, 77.) On November 7, 2008, Mr. Davis filed a Motion to Dismiss Mr. Gordon as his counsel in this matter. (Dkt. No. 78.) In this Motion, Mr. Davis alleged that Mr. Gordon "will not listen to me," was talking to and friendly with prior counsel which was a "conflict of interest in representing

my best interests," was and "resistant to investigating any other defense strategy." (Dkt. No. 78.) The Court set yet another hearing on the newest Motion to Withdraw for November 19, 2008. (Dkt. No. 81.)

At that hearing, the Court again probed Mr. Davis as to the basis for his Motions. The Court also reviewed the record which revealed a clear pattern of Mr. Davis' filing of *pro se* motions shortly before hearings in an effort to delay these proceedings. As such, the Court gave Mr. Davis the options of either proceeding with his current counsel, retaining new counsel, or proceeding *pro se* with Mr. Gordon serving as standby counsel. (Dkt. Nos. 83, 93.) A recess was taken to again allow Mr. Davis time to consider how to proceed and confer with counsel. Upon resuming the hearing, the Court again inquired of Mr. Davis as to how he wished to proceed. Mr. Davis refused to answer or respond. The Court then denied the Motion to Withdraw Plea of Guilty and requested that Mr. Gordon continue to assist Mr. Davis in his sentencing in this matter that was set for December 19, 2008. (Dkt. No. 83.)

Again, December 3, 2008, Mr. Davis filed a *pro se* Motion to Reconsider the Court's denial of his Motion to Withdraw Guilty Plea and a *pro se* Motion to Withdraw Counsel Phillip Gordon. (Dkt. Nos. 85, 86.) In the Motion to Reconsider Withdraw of Guilty Plea, Mr. Davis asserted the Court erred in not granting his prior Motion to Withdraw because his intent was to always proceed to trial and that his June 19, 2008 plea was coerced and the product of improper influence and ineffectiveness of his counsel. (Dkt. No. 86.) As to the Motion to Withdraw Counsel, Mr. Davis requested appointment of new counsel or that

Memorandum Order- Page 5

he be allowed to proceed *pro se*. (Dkt. No. 85.) The Government and Mr. Gordon both filed materials in response to the Motions. On December 9, 2008, the Court entered an Order granting Mr. Davis' request to proceed *pro se* and reappointed Mr. Gordon to appear as standby counsel for Mr. Davis at sentencing and denying his Motion to Withdraw Plea. (Dkt. No. 93.) The sentencing remained set for December 19, 2008.

Consistent with his pattern of filing *pro se* motions shortly before hearings, Mr. Davis, on December 17, 2008, filed a *pro se* Motion to Continue Sentencing. (Dkt. No. 94.) The Court initially denied the Motion and held the sentencing hearing as scheduled on December 19, 2008. (Dkt. No. 95.)[4] At the hearing, Mr. Davis again request that the sentencing be continued so that he could properly prepare for the sentencing hearing and, in particular, coordinate calling a witness, Dr. Dave Stanford, Ph.D, who was unavailable. (Dkt. No. 96.) The Court considered Mr. Davis' request and granted that same, continuing the sentencing hearing to February 9, 2009. (Dkt. No. 96.) The Court also granted Mr. Davis' Motion for authorization of payment of expert services for Dr. Stanford to appear as an expert witness at the sentencing hearing in this matter. (Dkt. No. 103.)[5] Ultimately, on February 9, 2009, Mr. Davis was sentenced to a 168 month term of imprisonment on Count

---

[4] The Court's Order (Dkt. No. 95) aptly describes its view of the record at the time and remains true today.

[5] In this Order, however, the Court did not grant the Defendant's requests for access to legal resources and request for order compelling return of property. (Dkt. No. 103.) During this same time, the Court also entered an Order on various other *pro se* filings made by Mr. Davis. (Dkt. No. 106.)

One of the Indictment. (Dkt. Nos. 109, 110.)[6] The ensuing appeal followed resulting in the April 13, 2010 Remand for this Court to reconsideration of Mr. Davis' request to withdraw his guilty plea. (Dkt. No. 133.) The Court has now done so and finds as follows.

### Standard for Withdrawing a Guilty Plea

"Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to the imposition of sentence if he 'can show a fair and just reason for requesting the withdrawal.'" *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008); Fed.R.Crim.P. 11(d)(2)(B). "The decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Showalter*, 569 F.3d 1150, 1156-57 (9th Cir. 2009) (quoting *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004) (quoting *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003)).

"While the defendant is not permitted to withdraw his guilty plea 'simply on a lark,' the 'fair and just' standard is generous and must be applied liberally." *McTiernan*, 546 F.3d at 1167. The "proper inquiry is whether the defendant has shown a fair and just reason for withdrawing his plea even if the plea is otherwise valid." *Id.* The defendant bears the burden of establishing that withdrawal is warranted. *Id.*; *see also* Fed. R. Crim. P. 11(d)(2)(B). "[E]ach case must be reviewed in the context in which the motion arose to determine whether, ultimately, a "fair and just" reason exists." *Id.* To help make this

---

[6] Dr. Stanford appeared at the February 9, 2009 sentencing hearing. (Dkt. Nos. 109, 124.)

determination, the Advisory Committee on Criminal Rules has adopted the following guidelines:

> Although the terms "fair and just" lack any pretense of scientific exactness, guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, as is the reason why the defenses were not put forward at the time of original pleading. The amount of time which has passed between the plea and the motion must also be taken into account.

Fed. R. Crim. P. 32 advisory committee's note (1983) (citations and internal quotation marks omitted). "Fair and just" reasons for withdrawal in the Ninth Circuit have included: "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *McTiernan*, 546 F.3d at 1167 (citing *Davis*, 428 F.3d at 805 (internal quotation marks omitted); *see also Showalter*, 569 F.3d at 1156-57 and *United States v. Briggs*, Nos. 09-30108, 09-30111, 09-30115, 09-30116, 2010 WL 3733558 at *2 (9th Cir. 2010) (citing *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009)). "Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made presentence." *Id.* (quoting *Davis*, 428 F.3d at 806-808 ("his counsel's gross mischaracterization [of a possible sentence] plausibly could have motivated his decision to plead guilty[,] [n]othing in Rule 11(d)(2)(B) requires a defendant to show more in order to satisfy the 'fair and just reason' standard.").

## Discussion

## I.      *Allegations of Threats and Coercion by Counsel*

The crux of Mr. Davis' Motion to Withdraw Guilty Plea is whether or not his plea was  voluntary or was instead the product of his counsel's coercion and threats that if he failed to plead guilty, the Government would investigate and arrest his mother and brother for obstruction of justice. At the September 2, 2010 hearing, Mr. Davis took the stand and testified that he was threatened and coerced multiple times by his attorney, Mr. Crafts, on June 18 and 19, 2008 into pleading guilty. (Transcript, Davis Direct.)[7] Mr. Crafts testified at the hearing and denied ever having threatened or coerced Mr. Davis into pleading guilty. Likewise, Mr. Sutton[8] testified that he never saw Mr. Crafts threaten or coerce Mr. Davis into entering his guilty plea. (Transcript, Sutton Direct.)[9]

The first instance of coercion alleged by Mr. Davis occurred at the motions hearing on June 18, 2008 where Mr. Davis alleges Mr. Crafts confronted him with the Government's evidence of recorded telephone calls between he and his mother where they

---

[7] The Court's citations to the "Transcript" are to a rough copy of the transcript from the September 2, 2010 hearing. (Dkt. No. 148.) Because this is a rough copy, the Court's citations do not include specific page numbers as they would likely be different in the final transcript.

[8] Although not the source of the alleged threats, Mr. Sutton, testified regarding his involvement in this matter. Mr. Sutton's testimony is relevant here in terms of how certain evidence, including the baggie of CD fragments, were recovered and his interactions and impressions of Mr. Davis during this case. In particular, Mr. Sutton described his involvement in a particularly heated meeting to discuss the plea offer from the Government that occurred at the jail on June 10, 2008 between he, Mr. Davis, Mr. Crafts, and Dr. Partridge.

[9] On cross-examination, Mr. Sutton acknowledged that he was not present when Mr. Crafts met with Mr. Davis on the evening of June 18, 2008 at the jail or in the Marshal's holding cell on June 19, 2008 prior to the hearing.

allegedly discussed destroying certain CD's which were potential evidence in this case. Mr. Davis testified this was when Mr. Crafts first told him the Government would investigate his family for possible obstruction of justice charges if he did not take the plea. The Court then granted the defense's request for a recess until the following day in order to allow time to review the evidence and determine how to proceed.

    The second instance alleged by Mr. Davis occurred later that evening when Mr. Crafts met with him at the Jail to listen to the telephone call recordings. Mr. Davis testified that Mr. Crafts came to the jail twice on June 18, 2008. The first time he brought the wrong CD's and the second time the battery on his laptop died. Thus, Mr. Davis claims he never heard the telephone calls that evening.[10] Mr. Davis maintains any reference he made to his mother regarding throwing away CD's during the telephone calls had to do with books on CD that were worthless and he didn't need anymore; denying that he instructed her to destroy any possible evidence. Mr. Davis stated that during the evening visits to the jail Mr. Crafts "hinted again that the phone call was circumstantial evidence of them helping me to destroy evidence" and that "my family would be implicated if I didn't take the plea." (Transcript, Davis Direct.)

    Mr. Crafts countered this allegation, testifying that on June 18, 2008 he played the tapes for Mr. Davis several times and discussed the contents of them with Mr. Davis.[11]

---

[10] At the sentencing hearing, Mr. Davis stated he never heard the audio recordings of the jail telephone calls but acknowledged that he did have a transcript. (Dkt. No. 124, p. 27.)

[11] Mr. Crafts did clarify that on the evening of June 18, 2008 when he went to the jail to play the tapes for Mr. Davis he went twice. The first time he played certain of the recordings but

Upon hearing the tapes, Mr. Crafts testified that Mr. Davis "panicked," "became nervous," and was worried about his family becoming the subject of criminal charges. (Transcript, Crafts Direct.) Mr. Crafts testified that Mr. Davis "demanded" that he negotiate a plea with the Government that it would not pursue charges against his family, which he then did.

The third occurrence came on June 19, 2008 while in the Marshal's holding area where Mr. Davis alleges Mr. Crafts showed him a baggie of CD fragments with his mother's name on it.[12] Mr. Davis claims Mr. Crafts told him the CD fragments were circumstantial evidence upon which the Government could investigate his mother for obstruction of justice and that he stated "this is enough to hang your family so you have no choice but to take the plea." (Transcript, Davis Direct.) Mr. Davis further stated that Mr. Crafts told him that his family would be incarcerated pending the investigation for obstruction of justice. Mr. Davis testified that his response to these comments was that he wanted to call his mother and tell her he was going to enter a guilty plea so that she would not be in jail and investigated. Mr. Crafts testified that he did not recall showing the baggie

---

that he had to leave and come back to retrieve one particular CD that he wanted Mr. Davis to hear. Mr. Crafts testified that at no time did his laptop battery die and if it had, he would have been able to plug it in to a wall outlet.

[12] Mr. Sutton testified regarding the discovery of certain evidence from Mr. Davis' home. Early in the case, Mr. Sutton visited Mr. Davis' mother at their home during which time he discovered two black flash drives and a portable hard disk drive. At this same time, Mr. Davis' mother told Mr. Sutton about a CD that she and Mr. Davis had broken up and thrown away. Mr. Sutton instructed her to recover the CD fragments from the trash and put them in a baggie which he picked up the following day. Mr. Sutton testified that he put all of these materials in his office safe until July of 2008 when counsel for the Government contacted him and asked him specifically about the items he had in his safe. Mr. Sutton then turned the materials over to the Government.

of CD fragments to Mr. Davis. Regarding the cell phone call from the Marshal's holding cell, Mr. Crafts testified that Mr. Davis had agreed to plead guilty but he wanted to talk to his mother and let her know what was going to happen. Mr. Crafts again denied that any threats were made at that time.

The final instance of coercion alleged by Mr. Davis occurred thereafter, on June 19, 2008, when Mr. Davis and his counsel were sitting in the courtroom awaiting the hearing. Mr. Davis claims Mr. Crafts pointed to the man sitting behind counsel for the Government and stated that if Mr. Davis did not sign the plea agreement that man would walk out and call the local sheriff's office and have his mother and brother taken into custody immediately. (Transcript, Davis Re-Direct.) Mr. Davis testified as a result he then signed the plea and did not say anything during the Rule 11 admonitions from the Court because he did not want his family put in jail or investigated. Mr. Crafts denied pointing to the investigator and threatening Mr. Davis on June 19, 2008 just prior to the plea hearing taking place. Mr. Crafts testified that instead on June 19, 2008 he and counsel for the Government discussed the interlineation made to the Plea Agreement to eliminate the stipulation regarding obstruction of justice.

Based on these events, Mr. Davis maintains his plea was coerced, involuntary, and he  was forced to enter a guilty plea in order to spare his family from being arrested. Counsel denies the accusations made my Mr. Davis. Thus, the issues raised are whether any such threats were made and whether or not Mr. Davis' guilty plea was the result of any such threats.

## II.    *Fair and Just Reason to Withdraw Guilty Plea*

### A.    *Threats and Coercion by Counsel*

Here, as directed, the Court took additional evidence, argument, and testimony regarding the allegations raised by Mr. Davis regarding his request to withdraw his plea. For the reasons stated herein, the Court finds there simply is no evidence to support Mr. Davis' claims or to find any "fair and just reason" to allow him to with draw his guilty plea. Having viewed first-hand the participants in these proceedings from the beginning, this Court finds the testimony of Mr. Crafts, Mr. Sutton, and Mr. Beuchner to be credible. Both Mr. Crafts and Mr. Sutton's renditions regarding their representation of Mr. Davis in this case were honest, forthright, and consistent with one another.

Mr. Davis' testimony, on the other hand, lacked credibility as he made only generalized conclusory assertions but provided little or no details or facts to support his allegations. Further, given Mr. Davis' age and the sentence imposed, Mr. Davis has nothing to lose by artificially delaying or unwinding these proceedings. The principle determining factor for this Court, however, is that it simply finds Mr. Davis' allegations that his guilty plea was a result of his counsel's threats and coercion to be without merit. Mr. Davis has

presented nothing more than his own self-serving testimony that is uncorroborated[13] and inconsistent with the record.[14]

The Court also finds Mr. Davis' testimony and allegations generally were lacking credibility because his appearances and conduct in court were unconvincing as to his truthfulness. Each of the witnesses for the Government testified about Mr. Davis' dual-personalities. In his direct testimony, Mr. Crafts, who had extensive personal interactions with Mr. Davis, described Mr. Davis as "highly intellectual" and well versed in the legal proceedings. Mr. Crafts described the initial plea negotiations that took place and testified that it was Mr. Davis who suggested trying to have him deemed incompetent and explained that there was a mechanism whereby he might later be released if he is determined to not be

---

[13] For example, Mr. Davis could have offered the testimony of his mother who was a party to the cell phone call from the Marshal's holding cell and whom he claims told him the Government was pursuing its investigation after he had plead guilty. Notably, his mother's affidavit regarding such facts that was submitted to the Idaho State Bar has been recanted. Counsel for the Government, on cross-examination of Mr. Davis, elicited that although his mother had signed an affidavit stating she heard Mr. Davis during the June 19, 2008 phone call from the Marshal's holding area, she has now recanted her statement. This affidavit was written by Mr. Davis and his mother signed it and was submitted with Mr. Davis' bar complaint which the Idaho State Bar has since denied.

[14] The Court recognized that at the sentencing hearing Mr. Davis raised the same arguments raised here in his request to withdraw his guilty plea. At the sentencing, Mr. Davis maintained that he never hid anything, had not lied to the investigators, and didn't recognize the hard drive found in the lock box. Mr. Davis stated that in early June his attorney "started telling me that I was going to be charged with obstruction of justice. And then it was June 18 when he told me that my family would be incarcerated." (Dkt. No. 124, pp. 31-32.) He further alleged that Mr. Crafts had told him "the investigator would take both of them into custody immediately if I didn't sign the plea." (Dkt. No. 124, p. 32.) Though these arguments were the same, Mr. Davis' testimony lacked veracity as his answers to questions asking for some level of detail regarding his allegations were inconsistent or simply never answered the question.

a danger to society. (Transcript, Crafts Direct.)[15] Mr. Crafts further testified about the difference between how Mr. Davis behaved in court as opposed to outside of court; describing Mr. Davis as engaging in a "high level of legal competency" out of court but in court Mr. Davis acted drastically different and was difficult to converse with. (Transcript, Crafts Direct.)

Agent Beuchner also described Mr. Davis' changing demeanor from "rambling" to "very articulate" and "very intelligent." (Transcript, Beuchner Direct.) Likewise, Mr. Sutton described Mr. Davis' "two personalities" as being the one he presents in court where he appears "dazed and confused" and his personality in jail where he is "relatively affable, pleasant, polite," "a bright man," "alert, [and] pays attention." (Transcript, Sutton Direct.) Mr. Sutton went on to state "my personal view is [Mr. Davis] is a very good actor. He is very compelling." Describing his in-court demeanor as a "character" different from the one he encountered in all of his visits with Mr. Davis outside of court.

On rebuttal, Mr. Davis again took the stand and testified that his IQ score was a 93 to rebut Mr. Crafts' statements that he was smarter than the average client. Further, Mr. Davis explained the testimony regarding his varying demeanor in-court versus out of court as being scared and nervous in court and when the search warrant was being executed.

---

[15] Mr. Davis testified that he always intended to proceed to trial and assert an insanity defense and that he did not want to be declared incompetent. On rebuttal, Mr. Davis denied that he wanted to be found incompetent but, instead, that he wanted to pursue the insanity defense at trial.

Having had the opportunity to view Mr. Davis' testimony and demeanor in-person now on several occasions, the Court finds the testimony of the Government's witnesses to be consistent with this Court's own observations of Mr. Davis throughout these proceedings. Mr. Davis is no novice when it comes to appearing in court. During his testimony at this most recent hearing, Mr. Davis' appearance was one of a man who could portrayed himself as bumbling when it served him but who was acutely aware of the circumstances and articulate in responding to questions asked of him. This is consistent with the Court's conclusions at the sentencing hearing where the Court described Mr. Davis as "manipulative" and that while in court he "acts like you are struggling for the next word. Yet when you just addressed the Court, you speak fluently and you are articulate...." (Dkt. No. 124, p. 39.) The Court finds there is nothing in the record to support Mr. Davis' allegations of threats and coercion by counsel.

### B.        *Totality of the Circumstances and Ninth Circuit Factors*

Having found there were no threats or coercion here, the Court next considered the totality of the circumstances in this case in order to determine whether "fair and just reasons" exist to grant the motion. *See McTiernan*, 546 F.3d at 1156-57; Fed. R. Crim. P. 32 advisory committee's notes (1983). Having done so, the Court concludes Mr. Davis has failed to show a "fair and just reason" for allowing him to now withdraw from his validly entered plea of guilty. Mr. Davis has not identified any newly discovered evidence, suffered

no prejudice for having taken the plea offer, nor any improper legal advice by his counsel.[16]

As the Court noted at sentencing, Mr. Davis had received "a tremendous benefit" and "big advantage" by entering into the Plea Agreement. (Dkt. No. 124, p. 39.)[17] Had the matter proceeded to trial with the likely additional charges and Mr. Davis been convicted, the statutory penalties would have far exceeded the lengthy 168 month sentence that was

---

[16] Though Mr. Davis and his attorneys have diverging testimony regarding the trial strategy in terms of insanity defense versus having him deemed incompetent and the theories of defense Mr. Davis proposed to pursue at trial, these are not basis for Mr. Davis' request to withdraw his plea. Mr. Davis' allegations regarding withdraw of his plea are that he was coerced and/or threatened into entering the plea in order to spare his family from possible obstruction of justice charges. Regardless, the Court has reviewed and considered the testimony regarding the proposed defense theories and strategies and finds they offer no "fair and just reason" for withdrawer because defense counsel did not improperly advise Mr. Davis in this case.

[17] The Presentence Report ("PSR") applied an enhancement for obstruction of justice and did not give Mr. Davis the reduction for acceptance of responsibility. Paragraphs 26-28 of the PSR discussed the facts relating to an adjustment for obstruction of justice. These paragraphs describe the recorded jail telephone calls between Mr. Davis and his mother where he "solicited the assistance of his mother to hide and destroy additional evidence" and "lied to investigator about having access to a locked box in the garage." (PSR, ¶ 26.) The paragraphs go on to note that the "locked box" contained a hard drive of additional pictures which the defense attorney had obtained from Mr. Davis' mother and brother and, on July 21, 2008, provided to the investigators. (PSR, ¶ 27.) The PSR concluded that the enhancement was appropriate because, in light of Mr. Davis' prior conviction for violating 18 U.S.C. § 2252, he was aware that possession of a large number of such images would result in an elevated sentence and, therefore, was considered to have "willfully and materially obstructed the investigation and sentencing of this offense." (PSR, ¶ 28.) This resulted in a two-level increase in the offense level. (PSI, ¶ 39.) For these same reasons, the PSR did not apply the adjustment for acceptance of responsibility. (PSR, ¶¶ 29, 30, and 41.)

The defense objected to the application of the obstruction enhancement and the failure to apply an adjustment for acceptance of responsibility. At the sentencing, the Court heard argument from counsel on the objections and ultimately did not apply the acceptance of responsibility adjustment stating Mr. Davis had not been honest or told the truth throughout the case. (Dkt. No. 124, p. 42.) The Court did not apply the obstruction of justice enhancement. (Dkt. No. 124, p. 42.)

imposed.[18] Mr. Davis has asserted that he always wanted to proceed to trial and testified at length about pursuing an insanity defense. Defense counsel both testified that they investigated the defense strategies proposed by Mr. Davis and concluded they were inconsistent and not viable defenses in light of the evidence. (Transcript, Crafts and Sutton.) This Court agrees with defense counsel as to the reasons why Mr. Davis' proposed defenses were not viable options for trial at the time of the original plea in this case.[19]

The Court has also taken into account the amount of time that has passed between the entry of the plea and the filing of the Motion to Withdraw the Plea; between June 19, 2008 and September 9, 2008. (Dkt. Nos. 52, 64.) This consideration does not necessarily favor one side or the other. This period of time is not particularly lengthy yet the Motion to Withdraw Plea was filed, as was becoming Mr. Davis' practice, very near the scheduled date of sentencing. The Court also finds, as discussed below, that Mr. Davis entered his plea of guilty knowingly, voluntarily, and of his own free will as evidenced by the record in this case. The evidence in the record proves Mr. Davis' guilty plea was properly and validly entered of his own volition and compulsion and as required by Rule 11.

---

[18] The Court makes no conclusion of what the outcome of a trial would have been in this case but does note that the evidence that has been presented against Mr. Davis in this matter appears to be more than sufficient to prove the elements of the crimes charged. Further, defense counsel who thoroughly reviewed the Government's evidence described it as "overwhelming." (Transcript, Sutton Direct.)

[19] For example, defense counsel testified that one theory raised by Mr. Davis was that he possessed the images because he was researching to find his own childhood abuser. Such a defense was not considered to be viable to his defense counsel because all of the images he possessed were of female children.

### C.    Voluntariness of the Guilty Plea

#### 1.    Rule 11 Requirements for Entry of Plea

"It goes without saying that a plea must be voluntary to be constitutional." *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001). "The general principles are well settled. To determine voluntariness, we examine the totality of the circumstances." *Id.* (citations omitted). A plea is voluntary if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "[A] plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes). In sum, a guilty plea is void if it was induced by promises or threats which deprive it of the character of a voluntary act." *Id.* (citations and quotations omitted).[20] In making this determination we "give 'substantial weight' to [the defendant's] in-court statements." *Id.* (citation omitted).

"Generally, a guilty plea is void if it was 'induced by promises or threats which deprive it of the character of a voluntary act.'" *Sanchez v. United States*, 50 F.3d 1448, 1455 (9th Cir. 1995) (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962)); *see also*

---

[20] "[T]he record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Doe*, 508 F.3d 563, 570 (9th Cir. 2007) (quoting *Brady v. United States*, 397 U.S. 742, 747 n. 4 (1970)).

*Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) ("A guilty plea is coerced where a defendant is "induced by promises or threats which deprive [the plea] of the nature of a voluntary act."). "To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's subjective state of mind and the constitutional acceptability of the external forces inducing the guilty plea." *Doe*, 508 F.3d at 570 (citation omitted).

### 2. *Application*

In *Sanchez*, the court confronted a similar factual scenario to that presented in this case where Mr. Sanchez alleged that his plea was involuntary due to the statement that Mr. Sanchez's wife might be indicted if he did not plead guilty. *Sanchez v. US*, 50 F.3d at 1455. There the Ninth Circuit stated: "governmental threats of criminal sanctions against relatives are relevant to the voluntariness determination." *Id.* (citing *Johnson v. Wilson*, 371 F.2d 911, 912 (9th Cir. 1967) (holding that police threats to charge petitioner's pregnant wife with a drug offense was relevant to the determination of voluntariness); *United States v. Sutton*, 794 F.2d 1415, 1422 (9th Cir.1986) (considering and rejecting a claim of coercion based on a threat of prosecution of the defendant's female companion)). In *Sanchez*, the Ninth Circuit ruled that

> the claim of coercion arising from a threatened prosecution of [Mr.] Sanchez's wife is not persuasive. First, during the plea colloquy, [Mr.] Sanchez specifically denied that any threats and coercions had been used against him. Courts generally consider such responses to be strong indicators of the voluntariness of the defendant's guilty plea. *Id.* (citing *United States v. Andrade-Larrios*, 39 F.3d 986, 990-91 (9th Cir. 1994); *Ulano*,

468 F.Supp. at 1064. More importantly, [Mr.] Sanchez did not claim at his section 2255 evidentiary hearing that he pleaded guilty out of fear that his wife would be indicted. When asked why he had denied during the plea colloquy that any coercion or promises had induced his plea, Mr. Sanchez stated that he did not want to jeopardize the Murcias' efforts to obtain his release, not that he feared for his wife's freedom. His other responses all focused on his assertion that he pleaded guilty because he was convinced that he would be released; none assert that he did so to protect his wife. Because Mr. Sanchez's own testimony fails to assert that he was coerced by threats, we reject his claim that he was coerced into pleading guilty.

*Sanchez*, 50 F.3d at 1455.

Here, after having taken additional evidence, testimony, and argument and once again combing the record in this case, the Court finds without question that Mr. Davis' plea of guilty on June 19, 2008 was not the product of any coercion, threats, duress or the like. Just the opposite, Mr. Davis entered his plea of guilty voluntarily, knowingly, and of his own free-will in accordance with each and every one of the requirements of Rule 11; as evidenced by the transcripts, Orders, and the entire record in this case. (Dkt. No. 120.) At the time of the Plea, Mr. Davis' statements and comments to the Court gave no indication that his plea was anything but voluntary. *See Kaczynski*, 239 F.3d at 1114 (In making this determination we "give 'substantial weight' to [the defendant's] in-court statements."). Mr. Davis' demeanor and appearance at his plea hearing gave every indication to this Court that his guilty plea was made "freely and voluntarily and with a full and clear understanding of the nature of the charges against him, [and] the consequence of his guilty plea." *Johnson v. United States*, 539 F.2d. 1241, 1245 (9th Cir. 1976) (upholding a district court's denial of a

motion to withdraw based on the defendant's allegations that his plea was involuntary because it was induced by fear for the safety of his wife who was in custody on related charges). The Ninth Circuit has held "an accused who has received the guidance of competent counsel should not be allowed to disown voluntary admissions in open court unless there is cause to question (their) accuracy and reliability." *Id.* (citations and quotations omitted).

At the plea hearing, Mr. Davis was placed under oath and participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and stated that he was comfortable with his counsel and had adequate time to confer with counsel before appearing at the hearing.[21] The Court advised him of the charge of possession of sexually explicit images of minors against him and had the Government provide the factual basis supporting the elements required to make up the charge; which was lengthy. Mr. Davis was then told of the possible penalties for the charge which was a maximum term of incarceration of twenty years, a statutory minimum penalty of ten years, and a term of supervised release of up to life. *See* 18 U.S.C. § 2252(a)(4). The Court advised Mr. Davis of his constitutional and civil rights and further advised him of the

---

[21] The Supreme Court has held that findings made by the judge accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Doe v. Woodford*, 508 F.3d 563, 571 (9th Cir. 2007) (federal petition for writ of habeas corpus from state prisoner) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The Tenth Circuit rejected a defendant's claim that the limitations on time for him to consider a plea bargain rendered it involuntary relying in part on the defendant's "participat[ion] in a [plea] colloquy that leaves little doubt that his plea was knowing and voluntary." *Id.* (quoting *United States v. Graham*, 466 F.3d 1234, 1239 (10th Cir.2006)).

Sentencing Guidelines and process for sentencing. The Court went over the terms of the written Plea Agreement and specifically asked him: "Were you threatened or forced or coerced in any way to sign that document?" To which Mr. Davis responded: "No, Your Honor." (Dkt. No. 120, p. 18.) The following exchange then occurred:

| | |
|---|---|
| The Court: | "You are not relying on any other terms or conditions than those stated in this plea agreement; is that correct?" |
| Mr. Davis: | "That's correct." |
| ... | |
| The Court: | "Do you agree with that summary?" |
| Mr. Davis: | "Yes, Your Honor." |
| The Court: | "So you admit those facts are true?" |
| Mr. Davis: | "Yes, Your Honor." |
| The Court: | "And that those facts would sustain a finding of guilt as to each element of that charge beyond a reasonable doubt?" |
| Mr. Davis: | "Yes, Your Honor." |
| ... | |
| The Court: | "Sir, are you ready to go forward with your plea?" |
| Mr. Davis: | "Yes, Your Honor." |
| The Court: | "You will be entering the plea voluntarily and of your own free will and because you are, in fact, guilty as charged, correct?" |
| Mr. Davis: | "Correct." |
| The Court: | "The Court will then ask you, what is your plea to the charge of possession of sexually explicit images of minors as charged in the indictment, guilty or not guilty?" |
| Mr. Davis: | "Guilty." |
| The Court: | "Just for the record, Counsel, as well as Mr. Davis, in the stipulations that were agreed to concerning the applicable Sentencing Guidelines you have struck that the defendant willfully obstructed, impeded or attempted to obstruct or impede the administration of justice as that reads?" |
| Mr. Crafts: | "That is correct, Your Honor." |
| Mr. Peters: | "The intent of striking that, Your Honor, was that we are striking the stipulation, not that it cannot be presented at sentencing because there were some things that came to our attention recently that caused us to think that that might fit. But it is not a stipulation." |

| The Court: | "The part I want to be concerned about, just so the record is clear, as far as it says 'stipulations concerning the applicable Sentencing Guidelines,' and that one that I just made reference to, No. 6, is stricken out; that is correct?" |
| Mr. Peters: | "Yes." |
| Mr. Crafts: | "That is correct." |
| ... | |
| The Court: | "Do you have any questions at all?" |
| Mr. Davis: | "No, Your Honor." |

(Dkt. No. 120, p. 22-25.) The written Plea Agreement itself supports the finding here, stating:

> Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this Agreement, the Government, under Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, will not pursue any other charges against the defendant based on fact currently known to the government, to wit, there will be <u>no charges brought relating to the matter seized from the defendant's home on August 16, 2007, or for obstruction of justice related to the defendant's alleged solicitation of others to destroy evidence on his behalf, which conduct is dealt with in this agreement (see below).</u>

(Dkt. No. 56, p. 1 ¶ B) (emphasis added). Later in the Plea Agreement, the parties made certain stipulations concerning the Sentencing Guidelines where they had interlined to omit the stipulation regarding whether the defendant willfully obstructed or impeded the administration of justice. (Dkt. No. 56, p. 11.) Finally, the Plea Agreement concludes with the following:

### XII.    ACCEPTANCE BY DEFENDANT AND COUNSEL

> I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and its effect upon the potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. <u>No other promises or inducements have been made</u>

by me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, no person has, directly or indirectly, threatened or coerced me to do, or refrain from doing, anything in connection with any aspect of this case, including entering a plea of guilty. I am satisfied with my attorney's advice and representation in this case.

(Dkt. No. 56, p. 19) (emphasis added). This is followed by Mr. Davis' signature dated June 19, 2008.

Based on the foregoing, the Court finds Mr. Davis' plea was knowing, voluntary, and intelligent. Mr. Davis was afforded each and every one of the guarantees encompassed in Rule 11. The record in this case was clear before and has now been made abundantly clear that Mr. Davis' plea fully satisfied the constitutional safeguards for the entry of such plea. (Dkt. No. 120.) The Court advised Mr. Davis repeatedly throughout this case of his constitutional rights, of the dangers and pitfalls of proceeding *pro se*, and assured itself of Mr. Davis' competency to proceed in this matter. *See i.e.* (Dkt. No. 119, 120.) As such, the Court finds the requirements of Rule 11 were met when Mr. Davis' plea was entered on June 19, 2008. To unwind the plea in this case, where there has been no "fair and just reason" for doing so, would render Rule 11 and its requirements meaningless. "We have no doubt that the decision to plead guilty is a difficult one for many defendants, but the fact that one struggles with the decision, and might later even come to regret it, does not render it coerced." *Doe*, 508 F.3d at 572 (citing *Johnson v. United States*, 539 F.2d 1241, 1243 (9th Cir. 1976)). Further, the Court acknowledges that a "perfect Rule 11 colloquy does not preclude a later plea withdraw." *United States v. Mayweather*, No. 08-50449, 2010 WL

Memorandum Order- Page 25

3733571, at *6 (citations omitted). In this case, however, the facts giving rise to Mr. Davis'

request to withdraw his plea were known to Mr. Davis when he entered his plea and he failed

to "candidly convey" such to the Court at the time of the plea thereby precluding him from

"establishing a fair and just reason for withdrawing his plea." *Id.* (discussing *McTiernan*, 546

F.3d at 1167.)

### D. Other Relevant Factors

#### 1. Intervening Circumstances

The reason for Mr. Davis' request to withdraw his plea could arguably be based

on intervening circumstances or "other" fair and just reasons based on his belief that the

Government was pursuing an investigation into possible obstruction of justice charges

against his family after he had plead guilty. The Motion was not brought until shortly before

his sentencing hearing that Mr. Davis began raising his allegations that his guilty plea had

been involuntary.

Mr. Davis testified that his motivation for filing the motion was that following

his guilty plea but before his sentencing, his mother had called him and told him the

investigation was continuing. Upon hearing this, Mr. Davis stated he began filing his *pro se*

motions to withdraw his guilty plea. On cross-examination, Mr. Davis had few details

regarding what exactly his mother had told him and anything about the details of the

purported investigation; Mr. Davis simply testified that from what his mother told him he believed she was being investigated and was afraid.[22]

Special Agent Donald Beuchner, took the stand to rebut Mr. Davis' testimony regarding the investigation in this matter. Agent Beuchner testified that he executed the search warrant on Mr. Davis' home and had listened to the jail's recorded telephone calls and discovered the call between Mr. Davis and his mother. Agent Beuchner also testified that there was never an investigation opened to anyone other than Mr. Davis. He did state that he called Mr. Davis' brother and talked to him and tried to contact his mother but was never able to interview her. These contacts, he stated, were for the purpose of investigating whether Mr. Davis qualified for the obstruction of justice enhancement at sentencing, not any investigation as to Mr. Davis' family.

These facts are not a part of Mr. Davis' allegations to withdraw his plea. If in fact Mr. Davis learned and/or believed after entering his guilty plea that the Government was pursuing an investigation of his family does not render the entry of his guilty plea any less voluntary let alone as an intervening circumstance or a "fair and just reason" for withdrawing the plea. The Court does not question that many defendants faced with the possibility of protecting their family and/or loved ones from further investigation would motivate them to accept such a plea offer. Even Mr. Sutton and Mr. Crafts both acknowledged that Mr. Davis

---

[22] Mr. Davis' mother did not testify at the evidentiary hearing in this matter to corroborate his statements.

was concerned throughout the case that his mother and brother would be implicated.[23] Such belief by Mr. Davis does not, however, provide a "fair and just reason" for allowing him to withdraw his guilty plea.

### 2. *Earlier Plea Negotiations*

In terms of the plea negotiations, Mr. Sutton testified that he counseled Mr. Davis "repeatedly, in terms of what I believed to be in his best interest." (Transcript, Sutton Direct.)

Mr. Sutton stated on June 10, 2008, he again met with Mr. Davis along with Mr. Crafts and Dr. Partridge, to discuss the plea negotiations. At this meeting, Mr. Sutton acknowledged he was "matter of fact" but not over bearing, in his discussion with Mr. Davis. (Transcript, Sutton Direct and Cross.) Having reviewed all of the Government's evidence, Mr. Sutton stated that he conveyed to Mr. Davis that the "time has come to tell the truth; time has come to accept responsibility." (Transcript, Sutton Direct.) Further, on cross-examination, Mr. Sutton described his demeanor as "very direct" but stated "I do not believe I intimidated him." (Transcript, Sutton Cross-Examination.) Mr. Sutton again testified that he "indicated to [Mr. Davis] that...the time had come to quit dancing around this, time has come for him to step up and tell the truth, time for him to recognize this was in his best interest." (Transcript, Sutton Cross-Examination.) He testified that Mr. Davis' response was

---

[23] Although Mr. Sutton further testified that he told Mr. Davis his family were not the target of the investigation and that they had been forthcoming with the evidence. (Transcript, Sutton Direct.)

"some equivocation" but that he recognized it was in his best interest and time for him to accept responsibility for these documents because the evidence was overwhelming.

On cross-examination, Mr. Crafts responded to inquiries regarding a June 10, 2008 meeting with Mr. Crafts, Mr. Sutton, and Mr. Davis. At that meeting, the individuals discussed the plea negotiations and Mr. Crafts recalled that Mr. Sutton was "rather pointed" with Mr. Davis. (Transcript, Crafts Cross-Examination.) Mr. Davis testified that at the June 10, 2008 meeting with Mr. Sutton, Mr. Crafts, and Dr. Partridge, that Mr. Sutton was "irate," "using profanity," "red in the face and just yelling at me to take the...plea." (Transcript, Davis Rebuttal.) Mr. Davis testified, contrary to Mr. Sutton's statement, that he told them he would not take the plea.

The circumstances surrounding these earlier plea negotiations between Mr. Davis and his counsel are not a part of the particular allegations in Mr. Davis' the Motion to Withdraw Plea or his testimony regarding the same. Regardless, the Court has considered the testimony and concludes these events also do not make up a basis for allowing Mr. Davis to withdraw his guilty plea. It would seem to not be uncommon for discussions such as these to become heated and emotional given their nature and ramifications. Moreover, taking Mr. Davis' testimony as true, the evidence regarding the June 10, 2008 meeting show that he knew how to, was able to, and in fact did reject the stern advice given to him from retained counsel.[24]

---

[24] The parties testimony is conflicting in terms of whether Mr. Davis agreed to the plea deal at that time but later backed out or whether Mr. Davis rejected the plea offer outright at the

### III. Conclusion

The Court has undertaken a careful, searching, and thorough review of the record in this matter in reconsidering Mr. Davis' request to withdraw his guilty plea. In doing so, the Court held an evidentiary hearing so as to supplement and complete the record in terms of the allegations raised by Mr. Davis in this case. Having done so and based on the foregoing, the Court finds Mr. Davis has failed in his burden to establish that withdrawal of his guilty plea is warranted in this case. *See McTiernan*, 546 F.3d at 1167; Fed. R. Crim. P. 11(d)(2)(B). Even having made every effort to generously and liberally apply the standard here, the Court declines to exercise its sole discretion to allow Mr. Davis to withdraw his plea. *Id.* Having been a first-hand observer to the totality of the circumstances in this case and again combed the record, this Court concludes without a doubt that there are no "fair and just" reasons that exist in this case upon which withdrawing of Mr. Davis' plea is warranted or justified. To do so upon this record would undermine the established system and safeguards for the taking and accepting of guilty pleas in criminal cases. Moreover, the allegations making up the basis for Mr. Davis' request here are unfounded. As such, the Court will deny the reconsideration of Mr. Davis' Motion to Withdraw Guilty Plea.

---

meeting. Regardless of the timing, the fact remains that Mr. Davis did not accept the plea because the trial remained set to begin on June 19, 2008 and the parties appear to agree that Mr. Davis signed the Plea Agreement on June 19, 2008.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Withdraw Plea of Guilty (Dkt. No. 64) is **DENIED**.

DATED:  **October 6, 2010**

Honorable Edward J. Lodge
U. S. District Judge